Case No. 18-1143 JPMorgan Chase Bank v. Larry Winget et al. You may proceed for the appellant, Mr. Hubbard. Thank you. Good morning, Your Honors. Good morning. Tom Hubbard on behalf of Larry J. Winget and the Larry J. Winget Living Trust. Your Honors, the issue here is fairly narrow. Oh, and I don't know if I noted I reserved five minutes for rebuttal. Okay. Thank you. If the fees at issue here had been incurred in the 2008 post-judgment proceeding against the Living Trust, we wouldn't be here. And if the fees had been awarded as part of an interim order in the ongoing 2015 action against Mr. Winget individually, we wouldn't be here because there's no final judgment there. And so this Court wouldn't have jurisdiction. But that wasn't the case. We're here because the fees awarded were granted to Chase through an order in the 2008 case despite having been incurred in the ongoing 2015 case. That's the problem. The 2015 action... So you're saying that they were incurred in the 15 case, but we wouldn't be here because we wouldn't have jurisdiction. So you're saying we don't have jurisdiction? Well, that's sort of the curiosity here is that when the judge consolidated the 2008 and the 2015 case, he declared that all orders going forward would be entered only in the 2008 case. So Chase submitted its request for fees in the ongoing 2015 case in the 2008 case. And the judge entered the order granting the fees in the 2015 case as an order in the 2008 case. So that's why we're here, because this order that we are appealing was entered in the 2008 case despite the fact that it involves fees incurred in an ongoing action, a different action, a separate action. But the consolidation doesn't remove the separate character of the actions, right? It does not, Your Honor. So it would still be an order in the 2015 case, wouldn't it? Well, I mean, we couldn't accept that at face value because that's not what the district court said. The district court said it was entering the order in the 2008 case. So by saying that, it forced our hands to bring this appeal. We had to. Judge Cohn told us, said that this is an order that he described the 2015 case as simply a post-judgment proceeding in the 2008 case. And he ascribed the finality of that 2008 case to the 2015 case in order to justify this award of fees. That's why we brought this appeal. Why do we have jurisdiction even if it was in the 2008 case? It's a post-judgment proceeding. The 2008 is in post-judgment. And so an interim award of fees in that case would be immediately appealable. So orders entered in the 2008 case are immediately appealable because it's in post-judgment. That's not always the case in a post-judgment situation, is it? It's not always the case, but it is the case here. And indeed, I think Chase has pointed to several cases that indicate that interim awards of fees are immediately appealable and reviewable. I mean, we'll be happy to talk to them about it, too. But, I mean, those involve kind of ongoing monitoring environmental situations that have no real end point in sight. This case, presumably, at some point, this judgment is going to be satisfied or deemed to be satisfied, or you're going to stop fighting about satisfaction of the judgment, and this case will be over, right? I think that's true, Your Honor. And I do agree with you that all of those cases that Chase has cited to involve the same case, an ongoing action in the same case. That isn't what we have here. But from our perspective, because the district court indicated that this was an order entered in the 2008 case, that's why we brought this appeal. We had to. If we didn't, we would be potentially foreclosed from ever arguing that Chase wasn't entitled to its fees in the 2015 action, even if we were completely successful in finding that action legally futile, ultimately. That's why our hand was forced, and that's why we're here today. As the Court is aware, there is no final judgment in the 2015 action. There is no finding that Chase has suffered any harm. And despite the consolidation, the finality in the 2008 case simply can't be assigned to the 2015 action, but that's what happened here. And that's what has brought us before the Court. As I said, the judge described the 2015 action as, quote, a post-judgment proceeding in the 2008 case. And thus he found that the finality from the 2008 case justified the award of interim fees in an ongoing and unresolved case, which is the 2015 action. And we ask that that finding be reversed as premature. Are there any other questions? You're asking that it be reversed as premature, but you don't dispute that the fees are owed as part of the ongoing collection effort? Oh, we do. I guess the point is that it's premature to make that decision. It's premature to make the decision whether or not these fees are collectible under Section 17 of the guarantee. The resolution of the 2015 action will make that determination. So you can't, our point is that it can't be determined whether or not Chase is entitled to these fees until we have resolution in the ongoing 2015 action. So even though the 2008 and the 2015 actions that you admitted in response to Judge Nalbany are separate actions, even though they've been consolidated, they are distinct actions. Both 15 has to be resolved before the fee issue in the 8 case. Okay. I can clarify if you'd like. Please. I think I know what you're saying. Okay, right. My point and our point is that whether or not the award of fees is justified in the 2015 action must await finality in that case. Okay. Without finality in the 2008 case, without some finding of harm, Chase is not entitled to an award of fees. And that finding hasn't been made yet. So what's the relief that you're asking for from this Court? What would we say precisely? We would ask that the award of fees in the 2015 fraudulent transfer action against Mr. Winget be reversed pending resolution of that action. I mean, I think reversed full stop. Why reverse rather than just stay? Because you're saying that you can't make that determination, but if we're reversing, are we making some determination? Well, Your Honor, I guess we would like reversal of the finding that Chase is entitled to these fees as an aspect of the 2008 case. So, number one, we don't believe that Chase is entitled to recover these fees in the 2015 action as part of the 2008 action. Number one. And number two, we believe that Chase's entitlement to the fees at all in the 2015 action must await finality in that case. Thank you, Your Honors. If there's nobody, anything else? Thank you, sir. Good morning. Good morning, Your Honors. It may please the Court. Your Honors, I'll agree with my... Can you just state your name? I'm sorry, Your Honor. Jim Ducayet on behalf of J.P. Morgan Chase. We agree this is a narrow question. The issue is whether or not Chase is entitled to post-judgment collection, costs and expenses, pursuant to a final non-appealable judgment that was entered by the district court. And that final non-appealable judgment was entered in connection with the 2008 case. And the question of whether or not the costs and expenses that were incurred fall within that judgment, I think starts with a consideration of the plain language of that order. And that order is extremely broad. It says that Chase is entitled to all costs and expenses paid or incurred by Chase in endeavoring to collect any or all the guaranteed obligations, or in prosecuting this or any related or future actions against the guarantor in connection with this. And so Mr. Winchett makes the point that this is a separate case, a 2015 action. But that's irrelevant because the language of the 2008 order broadly covers efforts to endeavor. And by the way, endeavor is a broad term. It means to attempt in prosecuting. And again, that's a broad term. But why do we have jurisdiction right now? You have jurisdiction right now because the order was entered in the 2008 case, pursuant to that final judgment. Why does it matter what case it was entered into? Sure. Where post-judgment is ongoing, we don't have jurisdiction usually unless it's a final order. So why don't we wait until the end? Why are we here in an interim situation? Well, because, Your Honor, the language of the final judgment here is endeavoring to collect. And what Mr. Winchett is trying to do is he's trying to rewrite that to suggest that there needs to be a successful collection. And that's not what the parties agreed to, and it's not what the district court entered. And there is a line of cases, which we cited in our supplemental brief, that talk about situations where there is a final judgment, and then there is an ongoing proceeding to attempt to effectuate that judgment. That's exactly what's going on here. Well, is it? I mean, those are all the monitoring cases. That's what you're talking about, right? Yes, Your Honor. But in some sense, again, the fact is we have been undertaking tremendous efforts to try to collect. And what happened here, by the way, and just to make the point about these two different cases, the only reason there is a separate case, Your Honor, just to back up for a second, is that once we got a final judgment, final non-appealable judgment against both Mr. Winchett and the trust, Mr. Winchett announced that he had actually revoked the trust. The trust didn't exist anymore. He had retitled all the assets that were in the trust, and he put them into his own name. And then he filed a declaratory judgment action and said, you know, you can't collect against the trust. That forced us to file a compulsory counterclaim for fraudulent conveyance, on which we prevailed in the district court. And so the point here is we have undertaken, we have endeavored, to use the language of the final judgment. But you're saying that every time you get a fee award, interim fee award, he can appeal it, right? Yes, Your Honor. If you got one every month, he could appeal every month? Your Honor, the cases – It would reappear 12 times a year. Your Honor, the cases suggest that there should be some reasonable period of time by which we go in and seek awards. And we have endeavored to do that on some sort of periodic basis. The award here covers a space of over a year's worth of collection efforts. But the fact of the matter is, there is no success – How many appeals have there already been in this case? Isn't there one? There's another one being briefed now. Yes, Your Honor. It's been up here, what, three times already? Yes, Your Honor. I mean, at some point it has to end, doesn't it? I couldn't agree more, Your Honor. And we're making every effort to try to satisfy the judgment. The problem is we have a situation where, again, assets are being moved around. We're seeking then to get relief from the court. But presumably there will be a finality. There will be some end to that, and then they can appeal from every fee award that they want to appeal from. Yes. My only point, Your Honor, is that that's not required by the terms of the judgment. And that's not what the parties bargained for. What the parties bargained for was that we would be – You can't defer jurisdiction on a court by bargaining with the other party, and the district court can't really do it either, right? I mean, they can in some limited situations. Well, he issued a final judgment, and it contains the language that I just indicated about endeavoring to collect. And the judge has to review these fee petitions for reasonableness. And so to your concern about should we go in every month, I could easily imagine the district court saying, I don't want to hear you every month. I want to do this on some sort of fixed and more extended time period. But the fact of the matter is we bargained for expenses, costs and expenses to be paid in connection with endeavoring to collect. And just to make the point a little bit more concrete, Your Honor, what's happened in this case is we have a judgment against the trust. Once that gets reduced to a final non-appealable judgment, we're told that all those assets got moved to Mr. Winget personally. We then proceed with our fraudulent conveyance action. But what happened is after the district court entered this fee order, we were told that all of those assets had now been retitled back in the trust. And so therefore the question about the finality of the 2015 action is, I think, going to be a question of is there damage now from the fraudulent conveyance claim by virtue of the fact that now all these assets have been put back into the trust. The fact of the matter is that's precisely why Chase bargained for a broad cost and expense reimbursement provision that isn't limited to successful collection. What is the status of the collection of the award that's at issue in this case? I'm sorry, Your Honor. This case involves a $2 million fee award. Yes, Your Honor. Have you collected that? We have not, Your Honor. We have an order from the district court. The money was placed into an escrow account pending resolution of the appeal in lieu of a bond. So that's the situation right now. The fact of the matter is we bargained for this very broad provision. The parties could have bargained for something different. And in fact, if you look at some of the cases that are cited in the papers, you'll see that they involve contractual provisions that are different and that are more consistent with what Mr. Winget seems to be arguing. So, for example, if you look at the Pransky decision, which is cited in the appellant's brief at page 12, that was a case where the contractual provision provided that the party had to be a prevailing party in a collection action. That's not what this language says. This language says we have to endeavor to collect. And believe me, we are endeavoring to collect. But endeavoring to collect doesn't necessarily mean that you come to the appellate court. And, of course, there are other fees that are constantly being generated. And you mentioned that $2 million is in place in escrow. Has this been sort of a practice of the trust to go ahead and, you know, where there's a dispute to put the money in escrow? And if that is the practice, you know, it seems to me that Chase is not in jeopardy of being disadvantaged by dissipating assets anymore because they're being held in escrow. And I know that was kind of a, you know, contorted question. But you understand what I mean? I'm going back to what Judge Nalbanian talked about earlier about how often you come. And what's the rationale for constantly coming if, in fact, the money is being placed in escrow? Well, Your Honor, that would be true in any case in which there would be a bond, which we would insist upon, you know, as a condition to any appeal. But they moved on. They're actually putting the dollar. They're actually putting the dollar. From our perspective, that's even better. But the fact of the matter is we have spent the better part of many years chasing around Mr. Wynja to try to collect. And we bargained for the ability to be made whole as we go along. And we are not seeking to burden either the district court or this court with monthly fee petitions and appeals. We're trying to do this in a way that makes sense, which is why we picked a period that was more than a year and identified sort of a discrete period. But aren't you able to be made whole if the money is being escrowed? Aren't you able to be made whole by an appropriate interest calculation post-judgment at the time that the whole thing is resolved? Perhaps. Would that be a way of making you whole? Perhaps, Your Honor. But I would just point out we've been at this now for over a decade. I know. And the fact of the matter is we loaned a considerable amount of money to Mr. Wynja on the condition that he execute the guarantee with the terms that provided for costs and expenses that we incurred endeavoring to collect on that. And so Your Honor is absolutely right. We could wait until this is finally done. I couldn't tell you with any kind of confidence when that's going to happen. And so, again, we're not trying to burden this court in any sense. But we're simply trying to enforce the contractual bargain that we entered into with Mr. Wynja. Again, these are going to be reviewed by the district court for reasonableness. So just thinking about this, let's assume that we agree with you that we have appropriate jurisdiction to resolve this issue before us today. How does that advance the ultimate resolution of this case? Any ruling that we make now, is that going to in any way curtail these future trips up to the court? I mean, how does it advance the litigation? I think it certainly could, Your Honor. I mean, the fact is the art – It would is what I was hoping for, but I'll take it. I think it will, Your Honor. I think it would. I think if you were to clearly hold that these are appropriately awarded pursuant to the express terms of the final judgment and the guarantee, I don't see what basis there would be to take an appeal on a subsequent fee award. And so I certainly would hope that this panel would issue an opinion that would make that issue clear, and this could become then something you don't have to deal with again. I can't assure you that that would be true, and certainly we spent a lot of time both in the district court and in front of this court in connection with this case. All we're asking for, Your Honor, is to be given the benefit of what the district court awarded us in connection with the final judgment, what we bargained for when we entered into the guarantee many years ago, and for all the reasons that the district court set forth in his opinion, we believe that the award here was appropriate. So unless there are any other questions, we would ask that you affirm the district court's order. Judge Larson? Judge Melbandian? Thank you, sir. Thank you. Mr. Hubbard? Thank you, Your Honors. Very quickly, two points. Number one, I don't think we should lose sight of the fact that this was an award of fees incurred in a different action from the 2008 case, which is what Counsel for Chase talked about largely. Different case, unresolved, still pending. And the question before the court in that action is whether or not Chase was harmed by the revocation of Mr. Wingett's trust and whether or not Mr. Wingett, through that revocation, received any of the guaranteed obligations. Now, when Mr. Ducayet speaks to the point that the judgment and Section 17 of the guarantee say endeavoring to collect, he doesn't finish that sentence, which is endeavoring to collect the guaranteed obligations. And that's the $2 million question. If there are no guaranteed obligations out there to collect, then Section 17 isn't triggered. That's the question that has to be resolved before Chase is entitled to recover fees in the 2015 action. Unless there are further questions? Thank you. Thank you, sir. We thank you for your submissions and your argument.